IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
In Admiralty
Civil Action No.: 7:23-CV-1064-M-BM

| | | |
|---|---|---|
| MARY BETH BERGMAN, | ) | |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S MEMORANDUM IN** |
| | ) | **OPPOSITION TO DEFENDANTS'** |
| v. | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| GEORGE REESER MOFFITT, III and | ) | |
| MICHELE MOFFITT, | ) | |
| | ) | |
| Defendants | ) | |

Plaintiff, Mary Beth Bergman, submits this memorandum in opposition to Defendants' Motion for Summary Judgment pursuant to Rule 56.1 of the Local Rules of Practice and Procedure.

## STATEMENT OF THE CASE

Plaintiff, Mary Beth Bergman, initiated this admiralty action for personal injuries and damages sustained on July 3, 2020 while on a demonstration ride (sea trial) as a prospective purchaser of a vessel owned by Michele Moffit and operated by her husband, George Reeser Moffitt, III. This incident occurred on the navigable waters near Beaufort Inlet, Carteret County, North Carolina. Plaintiff alleges that George Reeser Moffitt, III, and by *respondeat superior*, Michele Moffitt were negligent in the operation of the vessel.

Defendants have filed a Motion for Summary Judgment asserting a "rogue wave" defense and that Defendant, Michele Moffitt, was not on the vessel at the time of the incident and therefore, no viable claim exists against her.

<u>**STATEMENT OF THE FACTS**</u>

Michele Moffitt was the owner of a Palmetto motor boat, 33 foot in length and powered by two outboard motors of 300 horsepower each. The vessel was named SEA-N-DOUBLE and was assigned Official Number 1246191 by the United States Coast Guard. She listed the vessel for sale with Off the Hook Yacht Sales in Wilmington, North Carolina with the broker, Kirk Kirkman.

Josh Bergman was looking to purchase a larger boat that he could use for Wounded Warriors fishing and he found Ms. Moffitt's boat through Off the Hook Yacht Sales. With the assistance of his broker, Lisa Tulevech, Mr. Bergman with his wife, Mary Beth Bergman, entered a contract to purchase Ms. Moffitt's vessel. The contract required a survey or sea trial of the vessel.

A sea trial of the vessel was arranged by Ms. Moffitt's broker for July 3, 2020. On that date the Bergmans went to the Moffitts' residence along with their broker, Lisa Tulevech, and their marine surveyor, Charles Davis. Upon arrival they met the Defendant, George Reeser Moffitt, III, who was at the vessel. After speaking with Mr. Moffitt, they boarded the vessel for a sea trial. Mr. Moffitt operated the vessel. Ms. Bergman and Ms. Tulevech were seated in front of the center console. Mr. Moffitt operated the vessel from the helm position at the back of the center console with Mr. Bergman standing next to him and the marine surveyor, Charles Davis, standing behind them.

The weather was windy and the sea was choppy. As it was the day before the 4th of July, there was substantial boat traffic. They proceeded from the Moffitts' residence out into Bogue Sound and in an eastwardly direction under the Morehead City/Atlantic Beach bridge to Beaufort Inlet. Upon reaching Beaufort Inlet there was a lot of boat traffic in the inlet. In Mr. Moffitt's

opinion the seas were 2 to 3 feet in height. As they were proceeding through Beaufort Inlet, the tide was going out which caused the seas to build taller and steeper as the tide was going against the waves. Mr. Moffitt was operating the boat at about 25 knots (28.8 miles per hour). He was operating the boat at a fast speed to demonstrate the vessel's abilities despite the choppy sea and heavy boat traffic. As he was proceeding through the inlet he passed between two large sports fishing vessels coming in the inlet. Immediately after passing the sports fishing vessels he struck a wave or wake. When he drove over the top of the wave, the bow of the vessel dropped in the trough between the waves or wakes. This happened twice in succession. On the first wave the Plaintiff became airborne and landed partially off of the seat. When the vessel went over the second wave, the Plaintiff went airborne again and landed on the vessel's deck, as did Lisa Tulevech. The impact was so severe that some of the electronics were dislodged from the electronics box and the bracket holding one of the VHS radios broke, causing the radio to fall to the deck. After striking the second wave, Mr. Moffitt slowed the vessel down and returned to his residence. The Plaintiff, Mary Beth Bergman, sustained injuries to her back as a result of this incident.

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is an appropriate remedy only if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is not a genuine issue as to any material fact."

Summary judgment is appropriate when there exists no issue of genuine material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material

fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986); Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).  When making the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-movant.  Anderson, 477 U.S. at 255, 106 S.Ct. at 2513.

The remedy is such that a court must exercise great care and caution  in its review of the facts before granting summary judgment.  "Summary judgment is an extreme remedy and not to be granted unless the moving party has established his right to judgment with such clarity as to leave no room for controversy and the other party is not entitled to recover under any discernable circumstance."  Mandel v. U.S., 719 F.2d 963 (8th Cir. 1983), citing, Portis v. Folk Construction Company, Inc., 694 F.2d 520, 522, (8th Cir. 1982).  The severity of the remedy was also noted in Tippins v. Celotex Corp., 804 F.2d 949 (11th Cir. 1986), wherein the Court stated, "summary judgment is such a lethal weapon, depriving the litigant of a trial on the issues, caution must be used to ensure only those cases devoid of any need for factual determinations are disposed of by summary judgment."  Tippins, at 952.

Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).  There is no issue of trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Anderson, 477 U.S. at 250, 106 S.Ct. at 2511.  The moving party can bear his burden either by presenting affirmative evidence, or by demonstrating that the non-movant's evidence is insufficient to establish his claim.  Celotex Corp., 477 U.S. at 331, 106 S.Ct. at 2557 (Brennan, J., dissenting).  If the moving party makes a sufficient showing that there is an absence of evidence to support the non-moving party's case, the non-moving party may not rest upon mere allegations or denials in his pleadings, but must set forth specific facts showing that there is a genuine issue of trial.  Anderson, 477 U.S. at 256, 106 S.Ct. at 2514.

4

Summary judgment for a claimant is possible if the record shows the claimant to have satisfied the elements of the claim without need for judicial evaluation of conflicting material. Anderson, 477 U.S. at 250.

## APPLICABLE LAW

### I. NEGLIGENCE

A passenger is a person who travels in a public conveyance by virtue of a contract, express or implied, which involves paying a fare or some other consideration to the carrier. A visitor is a person other than a passenger or a member of the crew who is on board with the express or implied consent of the shipowner or operator of the vessel. Schoenbaum, Admiralty and Maritime Law, Vol. 1, Section 5-5 p. 169 (2d ed 1994).

Under general maritime law a passenger or visitor (guest passenger) may recover damages for personal injuries by proving the traditional elements of a negligence claim in admiralty:

1.      The existence of a duty owed by the vessel owner or operator;

2.      breach of the duty;

3.      proximate causation; and

4.      injury and damages.

Schoenbaum, Id at 171.

### A. STANDARD OF CARE

Negligence is conduct which involved creating a risk of harm to others. It is a failure to observe that degree of care, precaution, and vigilance which the circumstances demand, and the failure to observe the ordinary degree of care which people of ordinary prudence would use under the same circumstances. Traditional common law principles of negligence apply to claims under general maritime law. Douglas, et al v. Mercer, et al. 4:06-CV-138-BR and 4:06-CV-139-BR citing Virginia Int'l Terminals, Inc. v. M/V Katsuragi, 263 F.Supp. 2d 1025, 1035 (E.D. Va. 2003).

5

Plaintiffs must show "by a preponderance of the evidence: that the defendant owed the plaintiff a duty, that this duty was breached, and that a causal connection existed between the breach and the plaintiff's injury." Id.

"It is a settled principle of maritime law that a shipowner or vessel operator owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." Kermarec v. Compagnie Generals Transatlantic, 358 US 625, 79 S. Ct. 406, 3 L. Ed. 2250 (1959). Courts following the Kermarec case have expanded upon the notion of reasonable care under the circumstances. Differing circumstances necessitate differing levels of degree of care. "The extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to the passenger, will determine how high a degree of care is reasonable in each case." Rainey v. Paquet Cruises, Inc., 709 F. 2d 169, 172 (2nd Cir. 1983) see also Monteleone v. Bahama Cruise Line, Inc., 838 F. 2d 63, 65 (2nd Cir. 1988). "[I]n some instances reasonable care under the circumstances may be a very high degree of care; in other instances, it may be something less." Smith v. Southern Gulf Marine Co. No 2, Inc., 791 F. 2d 416, 421 (5th Cir. 1986). Factors to consider when determining what degree of care is required include, among others, 1) the experience of the operator, 2) the type of operator involved, 3) the dangers to the passenger, and 5) the operator's ability to take precautions against such danger. Id. at 421. In the Matter of the Petition of Catalina Cruises, Inc., 930 F. Supp. 1384 at 1391 (C.D. Cal. 1996).

Reasonable care includes the duty to warn of dangers which are not apparent and obvious. Since the duty is one of reasonable care under the circumstances, the circumstances of each case may vary. The extent to which circumstances surrounding maritime travel are different than those encountered in daily life and involve more danger to passengers and visitors,

will determine how high a degree is reasonable in each case. <u>Keefe v. Bahama Cruise Line, Inc.</u>, 867 F.2d 1318 (11th Cir. 1989).

The Court may determine the precise scope of the duty by taking into account particular circumstances, such as the special needs or disabilities of a passenger or visitor, and the extent to which circumstances surrounding Maritime travel are different from those encountered in overland travel. <u>Schoenbaum</u>, supra at 170.

## B.     RULES OF NAVIGATION

Congress has adopted the International Regulations for Preventing Collisions at Sea, 33 U.S.C. 1601, et. seq. which pertain to the operation and navigation of vessels on the sea in the area seaward of the Colregs Demarcation Line.   In addition, Congress has adopted the Inland Rules of Navigation, 33 U.S.C. 2001, et seq. which pertains to the operation and navigation of vessels within the inland waters of the United States. In this case, there is some question whether the incident occurred on the inland waters of Beaufort Inlet or beyond the Colregs Demarcation Line. However, it makes little difference which rules apply as the inland rules and the international rules that apply in this care are identical. The following Rules have a bearing on this action:

> Rule 5. **Look-Out.** Every vessel shall at all times maintain a proper lookout by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and the risk of collision.  33 U.S.C. 2005.

> Rule 6. **Safe Speed.** Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions.

> In determining a safe speed the following factors shall be among those taken into account:

... (v) The state of wind, sea and current, and the proximity of navigational hazards; 33 U.S.C. 2006.

Rule 2. **Responsibility.**

### (a) Exoneration

Nothing in these Rules shall exonerate any vessel, or the owner, master, or crew thereof, from the consequences of any neglect to comply with these rules or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case.

### (b) Departure from rules when necessary to avoid immediate danger

In construing and complying with these Rules due regard shall be had to all dangers of navigation and collision and to any special circumstances, including the limitations of the vessels involved, which may make a departure from these Rules necessary to avoid immediate danger.

The proper speed of the vessel is relative to the circumstances of the vessel and is directly related to the state of the body of water and the lookout being kept by the operator. The degree of care required in looking for possible hazards varies with the situation. Red Star Barge Line v. Lizza Asphalt Construction Company, 264 F.2d 467 (1959), . Woodford v. Carolina Power and Light Company, 798 F.Supp 307 (EDNC 1992). A vessel operator must always anticipate another vessel either stopped or approaching from any direction, as well as debris and other obstructions floating on or submerged just beneath the water. Constant vigilance is required. Woodford v. Carolina Power and Light Company, supra at 312.

The duty of keeping a proper lookout is of the highest importance, upon nothing else does the safety of those concerned so much depend. In the performance of this duty, the law requires indefatigable care and sleepless vigilance. A moment's negligence in failing to keep a proper lookout may involve the loss of the vessel and the lives of all on board. A lookout is specially

charged with the duty of observing any obstruction to navigation with that thoroughness that the circumstances permit. Farwell's, Rules of the Nautical Road, 6th ed. (1982) A Proper Lookout, p. 367.

In a case similar to the one before the Court, Seaboard Properties v. Bunchman, 278 F. 2d 679 (5th Cir. 1960), a vessel operator was found to be negligent when a passenger was injured when the boat in which he was riding hit a high wave and he was thrown out of his seat and crashed back down on the seat as the boat rose to meet his fall. See also Gilreath v. Silverman, 245 NC 51 (1956). See also Proctor v. Tsao, 1998 WL 708689 at *5 (4th Cir. Sept. 24, 1998) (affirming district court determination that defendant breached his duty of reasonable care to passengers when he drove a boat at an excessive speed, striking a wave and throwing a passenger in the air who came down and struck the deck fracturing his leg.)

In the case of Hines v. Triad Marine Ctr., 2011 U.S. Dist. LEXIS 170100 (EDNC, January 3, 2011) a case very similar to this case, which occurred in the same area, Beaufort Inlet, during a sea trial of a vessel, when the vessel struck a wave and injured the Plaintiff, the Court determined that the Defendant:

> Failed to exercise due care under the circumstances. Specifically, he failed to reduce speed when necessary, failed to properly navigate the waves in the inlet, and failed to keep a proper lookout. Hyde operated the vessel negligently, and such negligence was a proximate cause of Hines' personal injuries and economic harm.

The District Court also found that the Defendant, Hyde's, negligence was imputed to his then employer, Boats Unlimited NC, by the doctrine of *respondeat superior* citing Workman v. City of New York, 179 U.S. 552, 565, 21 S.Ct. 212, 45 L.Ed. 314(1900).

This case was affirmed by the Fourth Circuit, Hines v. Triad Marine Ctr, Inc., 487 Fed. Appx. 58; 2012 U.S. App. LEXIS 13992; 2012 WL 2688800.

9

### C.    WEATHER

The ship operator in the exercise of his duty for the safety of passengers must warn passengers of the dangers which the vessel's employees may reasonably anticipate from weather conditions or other reasons, which are not readily apparent to passengers, and the vessel is liable for injuries to such passengers which may have been avoided had due warning of the danger been given. Summers v. The Motor Ship Big Ron Tom, 262 F. Supp. 400 (1967).

### D.    ROGUE WAVE

Phrases such as "rogue wave," "freak wave,", "sneaker,", etc. are synonyms for "an act of God". An "act of God" is a natural phenomenon of "such unanticipated force and severity as would fairly preclude charging the Defendant with responsibility for damage occasioned by its failure to guard against it. Wyler v. Holland Am. Line – United States, Inc., 348 F.Supp.2d 1206 (USDC Western District of Washington 2003), citing Compania de Vaparos Insco, S A v. Missouri Pac Railroad Co, 232 F.2d 657, 660 (5th Cir. 1956). Hence the "rogue wave" defense is simply an alternative formulation of the argument that the inordinate size of the wave that struck the vessel was unforeseeable. Wyler, supra at 1210.

The U.S. Navy defines a "rogue wave" as 2.2 times taller than the average height of the tallest third of surrounding waves. Wyler, supra at FN1.

### E.    RESPONDEAT SUPERIOR

Blacks Law Dictionary, Revised 4th Edition, defines *respondeat superior* as follows:

> Let the master answer. This maxim means that a master is liable in certain cases for the wrongful acts of his servant, and a principal for those of his agent. Broom, Max. 843. Southern Paramount Pictures Co. v. Gaulding, 24 Ga.App. 478, 101 S.E. 311; Delaware, L. & W.R. Co. v. Pittinger, C.C.A.N.J., 293 F.853, 855, Under this doctrine master is responsible for want of care on servant's part toward those to whom master owes duty to use care, provided failure of servant to use such care occurred in course of

10

his employment. Shell Petroleum Corporation v. Magnolia Pipe Line Co., Tex.Civ.App., 85 S.W.2d 829, 832. Doctrine applies only when relation of master and servant existed between defendant and wrongdoer at the time of injury sued for, in respect to very transaction from which it arose. James v. J.S. Williams & Son, 177 La. 1033, 150 So. 9, 11. Hence doctrine is inapplicable where injury occurs while servant is acting outside legitimate scope of authority. Rogers v. Town of Black Mountain, 224 N.C. 119, 29 S.E.2d 203, 205. But if deviation be only slight or incidental, employer may still be liable. Klotsch v. P.F. Collier & Son Corporation, 349 Mo. 40, 159 S.W.2d 589, 593, 595; Adams v. South Carolina Power Co., 200 S.C. 438, 21 S.E.2d 17, 19, 20.

Agency is the relationship which results when one person, called the principal, authorizes another person, called the agent, to act for the principal. This relationship may be created by word of mouth, or by writing, or may be implied from conduct amounting to consent or acquiescence. SNML Corp. v. Bank, 41 N.C. App. 28, 36, 254 S.E.2d 274, 279 (1979).

"Agency may be implied or inferred and may be proved circumstantially by the conduct of the purported agent exhibiting a pretense of authority with the knowledge of the alleged principal". Pierside Boatworks, Inc. v. Owens, 2017 U.S. Dist. LEXIS 209305, citing R & G Constr. Inc., 540 S.E.2d at 118 (citing Fernander v. Thigpen, 278 S.C. 140, 293 S.E.2d 424 (S.C. 1982)).

"A spouse may constitute the other spouse as an agent either expressly or impliedly; but, if agency is implied, it must be by conduct, and not merely from a party's position as a spouse." Pierside Boatworks, Inc. v. Owens, 2017 U.S. Dist. LEXIS 209305, citing 41 C.J.S. Husband & Wife §56 (1991).

## ARGUMENT

The Defendants have moved for summary judgment contending there is no issue of material fact for trial. In support of said motion they have asserted four basis:

11

1.       Michelle Moffitt was not on the boat during the sea trial and there are no viable claims against her.

2.       That the vessel was struck by rogue waves that could not be avoided before the accident.

3.       There is no fact or expert testimony to establish the scope of duty owed to Plaintiff.

4.       There is no fact or expert testimony that establishes a breach of any duty owed to Plaintiff.

The Plaintiff will address each of these arguments:

1.       Defendants contend that Michele Moffitt was a co-owner of the vessel and that Plaintiff has neither pleaded nor established any theory which would allow an absent co-owner to be held liable for operational negligence and relies upon the case of <u>Gogel v. Maroulis</u>, 689 F.Supp.3d 73 (D.Md. 2023). In <u>Gogel</u> the vessel was owned by husband and wife and the husband took several of his friends on a pleasure fishing trip and the wife was not on board the vessel when the casualty occurred.

In the case before the Court the Plaintiff alleged in the Complaint (DE-1) at paragraph 4 that George Reeser Moffitt, III and wife, Michele Moffitt, at all times material herein were the owners of the vessel. The Defendants in their Answer (DE-16), page 5 at paragraph 4 denied that George Reeser Moffitt, III and Michele Moffitt were the owners of the vessel. The vessel was owned solely by Michele Moffitt. See Appendix E and F.

As the vessel was solely owned by Michele Moffitt the case relied upon by the Defendants, <u>Gogel v. Maroulis</u>, *Id.* is not applicable. Furthermore, at the time the casualty occurred in the case before the Court the vessel was not on a pleasure trip but was being

demonstrated to persons who had contracted to buy the vessel provided the vessel was found to be satisfactory upon a sea trial and survey.

The Plaintiff alleged in her Complaint that the Defendant, George Reeser Moffitt, III and by *respondeat superior,* the Defendant, Michele Moffitt, were negligent in the operation of the vessel. (DE-1, p. 16)

The maxim *respondeat superior* means that a principal is liable for the wrongful acts of her agent, in certain cases. Under this doctrine the principal is responsible for want of care on her agent's part to those to whom the principal owes the duty to use due care.

The agency relationship may be created by word of mouth, or by writing, or may be implied from conduct amounting to consent or acquiescence. SNML Corp. v. Bank, supra at 36.

The agency may be implied or inferred and may be proved circumstantially by the conduct of the purported agent exhibiting a pretense of authority with the knowledge of the alleged principal. A spouse may constitute the other spouse as an agent either expressly or impliedly but if the agency is implied it must be by conduct and not merely from a party's position as a spouse. Pierside Boatworks, Inc., supra.

At this stage of the proceeding taking all facts and reasonable inferences in the light most favorable to the non-movant there is sufficient evidence to establish that George Reeser Moffitt, III while conducting the sea trial or the demonstration ride of the vessel SEA-N-DOUBLE was acting as the agent of his wife, Michele Moffitt, the sole owner of the vessel.

Michele Moffitt was the owner of the vessel SEA-N-DOUBLE, Official Number 1246191 on July 3, 2020. (Plaintiff's Statement of Material Facts, 1). She listed the vessel for sale with Off the Hook Yacht Sales in Wilmington, NC with the broker, Kirk Kirkland. (Plaintiff's Statement of Material Facts, 5). The Bergmans, with the assistance of Lisa Tulevech,

had entered into a contract to purchase the vessel through Off the Hook Yacht Sales. (Plaintiff's Statement of Material Facts, 7).

One of the conditions of the contract required a sea trial or survey of the vessel. If a problem were found with the vessel during the survey or sea trial, the contract could be canceled. (Plaintiff's Statement of Material Facts, 8). A sea trial of the vessel was arranged with the broker from Off the Hook Yacht Sales by Ms. Tulevech. (Plaintiff's Statement of Material Facts, 9). Kirk Kirkman, the broker with Off the Hook Yacht Sales, contacted the Moffitts concerning scheduling a sea trial of the vessel. (Plaintiff's Statement of Material Facts, 10).

On July 3, 2020 the Bergmans met Lisa Tulevech at the Moffitts' residence in Atlantic Beach, NC where the vessel was docked for the purpose of viewing, inspecting and sea trialing the vessel. Also present were the Defendant, George Reeser Moffitt, III and Charles Davis, a marine surveyor retained by the Bergmans. (Plaintiff's Statement of Material Facts, 11).

When the Bergmans went to the Moffitts residence for the sea trial, Michele Moffitt was present and spoke with Mary Beth Bergman prior to the sea trial. Ms. Moffitt did not attend the sea trial but remained at home with her children. (Plaintiff's Statement of Material Facts, 12).

The normal procedure is for the broker to do the sea trial, not the owner. (Plaintiff's Statement of Material Facts, 13). The Moffitts' broker, Kirk Kirkman, advised that he was out of town and could not do the sea trial. He advised that the other broker would come over with the prospective purchasers, the Bergmans. (Plaintiff's Statement of Material Facts, 14)

Usually one of the brokers takes the responsibility of operating the boat with the surveyor during a sea trial and the owner is not present. (Plaintiff's Statement of Material Facts, 15). Ms. Tulevech expressed to George Reeser Moffitt, III that she could run the boat, that she had been

doing this for years, and he was insistent that he operate the boat. (Plaintiff's Statement of Material Facts, 16).

The Defendant, George Reeser Moffitt, III, Plaintiff, Joshua Bergman, Lisa Tulevech and Charles Davis boarded the SEA-N-DOUBLE on July 3, 2020 for a sea trial of the vessel. (Plaintiff's Statement of Material Facts, 17).

The Defendant, George Reeser Moffitt, III operated the vessel SEA-N-DOUBLE the entire time. (Plaintiff's Statement of Material Facts, 18). George Reeser Moffitt, III was driving fast to demonstrate the vessel's abilities despite the choppy sea and heavy boat traffic. (Plaintiff's Statement of Material Facts, 29).

At the time of the incident George Reeser Moffitt was talking to Mr. Bergman. They were talking about electronics and the surveyor was standing behind him at that time and was verifying everything was working on the depth and all of that. (Plaintiff's Statement of Material Facts, 33).

This evidence clearly demonstrates that George Reeser Moffitt, III was engaged in the work and was about the business of Michele Moffitt when the incident occurred. He was rendering a service to Michele Moffitt by demonstrating the vessel in an attempt to satisfy the terms of Ms. Moffitt's contract to sell the boat and to complete the sale. This was all done with the knowledge and acquiescence of Michele Moffitt. The conduct of George Reeser Moffitt, III in insisting that he operate the vessel and his operation of the vessel during the entire sea trial exhibited a pretense of authority and this was done with the knowledge of his wife, Michele Moffitt who was present when the sea trial began.

By her conduct she represented or permitted it to be represented that George Reeser Moffitt was her agent, therefore she is estopped to deny the agency against third persons who

have dealt, on the faith of such representation, with the person so held out to be her agent, George Reeser Moffitt, even if no agency existed in fact. <u>Daniel Boone Complex, Inc. v. Furst,</u> 43 N.C. App. 95, 258 S.E.2d 379, 1979 N.C. App. LEXIS 3036.

Viewing the facts and all inferences in the light most favorable to the Plaintiff, the Defendants' Motion for Summary Judgment should be denied.

2.    The Defendants contend that summary judgment should be granted because both the Plaintiff and the Defendants agree that the accident was caused when the vessel hit a rogue wave. The Defendants' basis for "rogue" wave was a statement made by the Plaintiff in her deposition. The Plaintiff was a beginner/intermediate as far as driving or sailing a boat and her sole training was a boater safety class that she took in high school (Plaintiff's Statement of Facts, 47). She stated in her deposition:

> Because it was so choppy and rough, we weren't out there very long. He turned around to come back into the inlet, and when he was coming into the inlet, it was choppier that way. And he was going to demonstrate how well it handled in rough waters with Josh. So he was going faster to kind of show, -- and we caught two rogue big waves. The first one hit the front of the boat and catapulted Lisa and I off the seat and slammed me back down on the seat. I was holding—we were sitting in front of the boat. I was on the left side. Lisa was to my right. I was kind of angled toward her holding onto the T-top bracket with my right arm. So the first one when it hit, it kind of slammed us, threw us up, jerked me, but I was still able to hold on. I came back down kind of half on half off the seat. And then the second one threw us up, and it threw Lisa up to the right into the bottom of the boat and snatched me. I lost my grip on the pole and ended up in the bottom of the boat, and at that point, Mr. Moffitt killed the engines and kind of got control of it and stopped and, you know, is making sure everybody was okay. Mary Beth Bergman deposition, Exhibit A, page 19, line 7 through page 20, line 10; Plaintiff's Response to Defendants' unnumbered 4th contended Undisputed Material Fact.

Ms. Bergman, who had limited boating experience, was attempting to describe waves that she never saw before the boat hit them. (Plaintiff's Statement of Material Facts, 45). Lisa

Tulevech who was seated next to Ms. Bergman did not see the waves or wakes prior to the vessel striking them. (Plaintiff's Statement of Material Facts, 46). The vessel operator, George Resser Moffitt, III, did not see the waves or wakes prior to striking them. (Plaintiff's Statement of Material Facts, 35).

Phrases such as "rogue wave," "freak wave", "sneaker", etc. are synonyms for "an act of God". An "act of God" is a natural phenomenon of "such unanticipated force and severity as would fairly preclude charging the Defendant with responsibility for damage occasioned by its failure to guard against it. <u>Wyler v. Holland Am. Line – United States, Inc.</u>, 348 F.Supp.2d 1206 (USDC Western District of Washington 2003), citing <u>Compania de Vaparos Insco, S A v. Missouri Pac Railroad Co</u>, 232 F.2d 657, 660 (5th Cir. 1956). Hence the "rogue wave" defense is simply an alternative formulation of the argument that the inordinate size of the wave that struck the vessel was unforeseeable. <u>Wyler</u>, supra at 1210.

The U.S. Navy defines a "rogue wave" as 2.2 times taller than the average height of the tallest third of surrounding waves. <u>Wyler</u>, supra at FN1.

In support of their position the Defendants rely on the case of <u>Southard v. Lester</u>, 2006 U.S. Dist. LEXIS 109152 (D.Ct. 2006). The Defendants' contention is without merit and the case they rely upon is easily distinguished from the case before the Court.

<u>Southard v. Lester</u> involved a passenger on a charter fishing boat who was injured when a wave struck the boat. The vessel OSPREY was captained by Lester, who was an experienced, licensed charter boat captain. They left the dock at Oregon Inlet, NC at approximately 5:30 in the morning and headed for the ocean. Captain Lester upon reaching the ocean observed 3 to 4 foot waves and choppy water. Consequently, Lester slowed his vessel's speed to 18 knots which is 3-5 knots less than the OSPREY's normal 21-23 knot cruising speed. Before the OSPREY reached

the fishing grounds, Lester was alone on the flying bridge and his mate was in the cabin with the passengers. Lester saw a wave that he estimated to be 8-10 feet in height breaking approximately one boat length in front of the OSPREY. When Lester saw the wave, he immediately pulled the throttle back to slow down as quickly as he could. However, Lester could not avoid the wave, and the OSPREY struck it and came down hard off its steep back.

In the Southard case the wave that struck the vessel was more than 2.2 times taller than the average height of the other waves and met the U.S. Navy's definition of a rogue wave. The wave was a natural phenomenon of such unanticipated force and severity as would fairly preclude charging the Defendant with responsibility for damage occasioned by its failure to guard against it.

The case of Southard v. Lester is easily distinguished from this case on the facts.

In the case before the Court the vessel was a 33-foot center console powered by two 300-horsepower outboard motors. (Plaintiff's Statement of Material Facts, 2).

The vessel was being operated by George Moffitt who had 30 years' experience but who did not have a captain's license. (Defendants' Statement of Material Facts, 6th unnumbered paragraph).

The vessel was listed for sale and a contract had been entered to purchase the vessel and the contract required a sea trial of the vessel. (Plaintiff's Statement of Material Facts, 7 and 8).

The normal procedure is for the brokers to do the sea trial, not the owner. (Plaintiff's Statement of Material Facts, 13).

George Reeser Moffitt, III insisted that he operate the boat during the sea trial. (Plaintiff's Statement of Material Facts, 16).

After boarding the vessel at the Moffitt residence they proceeded out of the canal and headed toward the Atlantic Beach bridge, passing under the bridge and to Beaufort Inlet. (Plaintiff's Statement of Material Facts, 20).

As they went through Beaufort Inlet it was windy and the seas were choppy. (Plaintiff's Statement of Material Facts, 21).

There was a lot of boat traffic on the day of the incident because it was the day before the 4th of July and there were all shapes, sizes of boats in and out that day. (Plaintiff's Statement of Material Facts, 22).

In the opinion of George Moffitt the seas were 2-3 feet. (Plaintiff's Statement of Material Facts, 23).

The waves were coming in the inlet and they were going into the waves head on. (Plaintiff's Statement of Material Facts, 24).

As they were going through Beaufort Inlet the tide was going out the inlet. (Plaintiff's Statement of Material Facts, 25).

In George Moffitt's experience that on an ebbing tide in Beaufort Inlet the seas build up taller and steeper when you have the tide going against the waves. (Plaintiff's Statement of Material Facts, 26).

The vessel went through good until we got to that inlet area. (Plaintiff's Statement of Material Facts, 27).

George Moffitt was operating the boat at about 25 knots. (Plaintiff's Statement of Material Facts, 28).

George Moffitt was driving fast to demonstrate the vessel's ability despite the choppy sea and heavy boat traffic. (Plaintiff's Statement of Material Facts, 29).

19

Lisa Tulevech testified that during the sea trial which was being done on the 4th of July weekend, the inlet was a mess with currents coming from different directions, there was a lot of boats and George Reeser Moffitt, III was driving faster than she would drive in those conditions. (Plaintiff's Statement of Material Facts, 30).

George Moffitt testified in his deposition that there was a lot of vessel traffic in the inlet. A lot of what was going on was boat wakes. There were big sports fishers there when that happened. I think it was a rogue situation with a sports fisher wake on a wave that we hit because it was two and there was no more like that. (Plaintiff's Statement of Material Facts, 31).

A lot of boats coming in, there were sports fishers coming in, there was one on each side coming by me, a lot of boat traffic testified Moffitt. The sports fishers had just passed, they were a little bit past me when it happened. (Plaintiff's Statement of Material Facts, 32).

At the time of the incident Moffitt was talking to Mr. Bergman. They were talking about electronics and the surveyor was standing behind him at that time and was verifying everything was working on the depth and all of that. (Plaintiff's Statement of Material Facts, 33).

Moffitt never reduced speed before he struck the waves. (Plaintiff's Statement of Material Facts, 34). Moffitt never slowed down before hitting the first wave because he didn't see it. (Plaintiff's Statement of Material Facts, 35). There was nothing obstructing Moffitt's vision in front of the vessel. (Plaintiff's Statement of Material Facts, 36).

Not a lot of time elapsed, only seconds, between striking the first wave and the second wave. (Plaintiff's Statement of Material Facts, 37). The first sea that the vessel struck was steep enough that the bow of the vessel went up and came down and struck the second one. (Plaintiff's Statement of Material Facts, 38).

When the boat struck the first wave Mary Beth Bergman and Lisa Tulevech were catapulted from their seat and slammed back down on the seat. The Plaintiff was holding onto the T-Top bracket with her right arm, the impact jerked her; however, she was still able to hold onto the bracket and came down half on, half off, the seat. (Plaintiff's Statement of Material Facts, 39).

When the vessel struck the second wave both the Plaintiff and Ms. Tulevech were thrown up and Ms. Tulevech landed on the floor on the right side of the boat, the Plaintiff lost her grip on the T-Top bracket and was thrown to the floor of the boat. (Plaintiff's Statement of Material Facts, 40).

When the vessel struck the first wave and came down it hit pretty hard and when it struck the second wave it hit hard again. It hit – it was like bam and then it was a bam. (Plaintiff's Statement of Material Facts, 41).

The impact was so severe that some of the electronics came out of the console and the bracket holding the VHF radio broke causing the radio to fall to the floor. (Plaintiff's Statement of Material Facts, 42).

Immediately after striking the waves the sea trial was terminated, and they returned to the dock at the Moffitts residence. (Plaintiff's Statement of Material Facts, 43).

Where Lisa Tulevech and Mary Beth Bergman were seated you cannot see out in front of the vessel if the boat is on a plane because of the height of the bow. (Plaintiff's Statement of Material Facts, 44).

Ms. Bergman did not see the waves before the boat hit them. (Plaintiff's Statement of Material Facts, 45).

Lisa Tulevech, who was seated next to Ms. Bergman, did not see the wave or wake prior to striking them. (Plaintiff's Statement of Material Facts, 46).

In the case before the Court there is no evidence as to the size of the wave from any person on board the vessel as no one saw it. The operator of the vessel, George Reeser Moffitt, III, opined that the waves they hit were a combination of the waves and wakes from the two sports fishing vessels that he had just passed before the incident and the waves. (Plaintiff's Statement of Material Facts, 31). This is not a natural phenomenon or an "act of God". It was not a rogue wave.

Viewing the facts and all inferences in the light most favorable to the Plaintiff, the Defendants' Motion for Summary Judgment based on a rogue wave defense should be denied.

        3.      The Defendants move for summary judgment on the grounds that the Plaintiff has failed to establish the scope of duty owed by the Moffitts to Plaintiff. They contend that the Plaintiff has no evidence establishing the standard of conduct required by the Moffitts in this accident. Plaintiff has not shown what conduct was expected by a prudent seaman when confronted with the sea conditions on July 3. Establishing the duty owed or standard of care is an essential element to the Plaintiff's claim.

The Defendants cite no law to support their position. The duty owed by the Defendants to the Plaintiff who was a guest passenger on their vessel is the duty of exercising reasonable care under the circumstances which was plead in the Complaint (DE-1) with particularity.

"It is a settled principle of maritime law that a shipowner or vessel operator owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." Kermarec v. Compagnie Generals Transatlantic, 358 US 625, 79 S. Ct. 406, 3 L. Ed. 2250 (1959). Courts following the Kermarec case have expanded upon the notion of reasonable

care under the circumstances. Differing circumstances necessitate differing levels of degree of care. "The extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to the passenger, will determine how high a degree of care is reasonable in each case." Rainey v. Paquet Cruises, Inc., 709 F. 2d 169, 172 (2nd Cir. 1983) see also Monteleone v. Bahama Cruise Line, Inc., 838 F. 2d 63, 65 (2nd Cir. 1988). "[I]n some instances reasonable care under the circumstances may be a very high degree of care; in other instances, it may be something less." Smith v. Southern Gulf Marine Co. No 2, Inc., 791 F. 2d 416, 421 (5th Cir. 1986). Factors to consider when determining what degree of care is required include, among others, 1) the experience of the operator, 2) the type of operator involved, 3) the dangers to the passenger, and 5) the operator's ability to take precautions against such danger. Id. at 421. In the Matter of the Petition of Catalina Cruises, Inc., 930 F. Supp. 1384 at 1391 (C.D. Cal. 1996).

Reasonable care includes the duty to warn of dangers which are not apparent and obvious. Since the duty is one of reasonable care under the circumstances, the circumstances of each case may vary. The extent to which circumstances surrounding maritime travel are different than those encountered in daily life and involve more danger to passengers and visitors, will determine how high a degree is reasonable in each case. Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318 (11th Cir. 1989).

The Court may determine the precise scope of the duty by taking into account particular circumstances, such as the special needs or disabilities of a passenger or visitor, and the extent to which circumstances surrounding Maritime travel are different from those encountered in overland travel. Schoenbaum, supra at 170.

### B. RULES OF NAVIGATION

Congress has adopted the International Regulations for Preventing Collisions at Sea, 33 U.S.C. 1601, et. seq. which pertain to the operation and navigation of vessels on the sea in the area seaward of the Colregs Demarcation Line. In addition, Congress has adopted the Inland Rules of Navigation, 33 U.S.C. 2001, et seq. which pertains to the operation and navigation of vessels within the inland waters of the United States. In this case, there is some question whether the incident occurred on the inland waters of Beaufort Inlet or beyond the Colregs Demarcation Line. However, it makes little difference which rules apply as the inland rules and the international rules that apply in this care are identical. The following Rules have a bearing on this action:

> Rule 5. **Look-Out.** Every vessel shall at all times maintain a proper lookout by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and the risk of collision. 33 U.S.C. 2005.

> Rule 6. **Safe Speed.** Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions.

> In determining a safe speed the following factors shall be among those taken into account:

> ... (v) The state of wind, sea and current, and the proximity of navigational hazards; 33 U.S.C. 2006.

> Rule 2. **Responsibility.**

>     **(a)**     **Exoneration**

> Nothing in these Rules shall exonerate any vessel, or the owner, master, or crew thereof, from the consequences of any neglect to comply with these rules or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case.

24

**(b) Departure from rules when necessary to avoid immediate danger**

> In construing and complying with these Rules due regard shall be had to all dangers of navigation and collision and to any special circumstances, including the limitations of the vessels involved, which may make a departure from these Rules necessary to avoid immediate danger.

The proper speed of the vessel is relative to the circumstances of the vessel and is directly related to the state of the body of water and the lookout being kept by the operator. The degree of care required in looking for possible hazards varies with the situation. Red Star Barge Line v. Lizza Asphalt Construction Company, 264 F.2d 467 (1959), . Woodford v. Carolina Power and Light Company, 798 F.Supp 307 (EDNC 1992). A vessel operator must always anticipate another vessel either stopped or approaching from any direction, as well as debris and other obstructions floating on or submerged just beneath the water. Constant vigilance is required. Woodford v. Carolina Power and Light Company, supra at 312.

The duty of keeping a proper lookout is of the highest importance, upon nothing else does the safety of those concerned so much depend. In the performance of this duty, the law requires indefatigable care and sleepless vigilance. A moment's negligence in failing to keep a proper lookout may involve the loss of the vessel and the lives of all on board. A lookout is specially charged with the duty of observing any obstruction to navigation with that thoroughness that the circumstances permit. Farwell's, Rules of the Nautical Road, 6th ed. (1982) A Proper Lookout, p. 367.

In a case similar to the one before the Court, Seaboard Properties v. Bunchman, 278 F. 2d 679 (5th Cir. 1960), a vessel operator was found to be negligent when a passenger was injured when the boat in which he was riding hit a high wave and he was thrown out of his seat and crashed back down on the seat as the boat rose to meet his fall. See also Gilreath v. Silverman, 245 NC 51 (1956).

25

See also <u>Proctor v. Tsao</u>, 1998 WL 708689 at \*5 (4th Cir. Sept. 24, 1998) (affirming district court determination that defendant breached his duty of reasonable care to passengers when he drove a boat at an excessive speed, striking a wave and throwing a passenger in the air who came down and struck the deck fracturing his leg.)

In the case of <u>Hines v. Triad Marine Ctr.</u>, 2011 U.S. Dist. LEXIS 170100 (EDNC, January 3, 2011) a case very similar to this case, which occurred in the same area, Beaufort Inlet, during a sea trial of a vessel, when the vessel struck a wave and injured the Plaintiff, the Court determined that the Defendant:

> Failed to exercise due care under the circumstances. Specifically, he failed to reduce speed when necessary, failed to properly navigate the waves in the inlet, and failed to keep a proper lookout. Hyde operated the vessel negligently, and such negligence was a proximate cause of Hines' personal injuries and economic harm.

The District Court also found that the Defendant, Hyde's, negligence was imputed to his then employer, Boats Unlimited NC, by the doctrine of *respondeat superior* citing <u>Workman v. City of New York</u>, 179 U.S. 552, 565, 21 S.Ct. 212, 45 L.Ed. 314(1900). This case was affirmed by the Fourth Circuit, <u>Hines v. Triad Marine Ctr., Inc.</u>, 487 Fed. Appx. 58; 2012 U.S. App. LEXIS 13992; 2012 WL 2688800.

Viewing the facts and all inferences in the light most favorable to the Plaintiff, the Defendants' Motion for Summary Judgment should be denied.

4.     The Defendant moves for summary judgment contending that the Plaintiff has failed to establish the breach of any duty owed to the Plaintiff. The Defendant contends that the Plaintiff has failed to identify any duty owed and has no evidence of a breach of this duty. The Defendant cites no authority to support its position, and their argument is that the only evidence in this case is that the vessel hit a rogue or unanticipated wave.

26

The Defendants' argument is without merit. The Defendants had a duty to exercise reasonable care under the circumstances. Since the duty is one of reasonable care under the circumstances, the circumstances of each case may vary. In this case the operator of the vessel, George Reeser Moffitt, III, failed to exercise due care under the circumstances.

In this case, there is some question whether the incident occurred on the inland waters of Beaufort Inlet or beyond the COLREGS demarcation line. However, it makes little difference whether the International Regulations for Preventing Collisions at Sea 33 U.S.C. 1601, et seq. or the Inland Rules of Navigation, 33 U.S.C. 2001, et seq. apply as in this case the rules are identical.

> Rule 5. **Look-Out.** Every vessel shall at all times maintain a proper lookout by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and the risk of collision. 33 U.S.C. 2005.

> Rule 6. **Safe Speed.** Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions.

> In determining a safe speed the following factors shall be among those taken into account:

> ... (v) The state of wind, sea and current, and the proximity of navigational hazards; 33 U.S.C. 2006.

> Rule 2. **Responsibility.**

> **(a)     Exoneration**

> Nothing in these Rules shall exonerate any vessel, or the owner, master, or crew thereof, from the consequences of any neglect to comply with these rules or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case.

> **(b)     Departure from rules when necessary to avoid immediate danger**

27

> In construing and complying with these Rules due regard shall be had to all dangers of navigation and collision and to any special circumstances, including the limitations of the vessels involved, which may make a departure from these Rules necessary to avoid immediate danger.

The proper speed of the vessel is relative to the circumstances of the vessel and is directly related to the state of the body of water and the lookout being kept by the operator. <u>Woodford v. Carolina Power and Light Company</u>, supra.

The duty of keeping a proper lookout is of highest importance, upon nothing else does the safety of those concerned so much depend. In the performance of this duty, the law requires indefatigable care and sleepless vigilance. A moment's negligence in failing to keep a proper lookout may involve the loss of the vessel and the lives of all on board. A lookout is specially charged with the duty of observing any obstruction to navigation with that thoroughness that the circumstances permit. <u>Farwell's Rules of the Nautical Road</u>, 6th ed. (1982) A Proper Lookout, p. 367.

In the case of <u>Hines v. Triad Marine Ctr.</u>, 2011 U.S. Dist. LEXIS 170100 (EDNC, January 3, 2011) a case very similar to this case, which occurred in the same area, Beaufort Inlet, during a sea trial of a vessel, when the vessel struck a wave and injured the Plaintiff, the Court determined that the Defendant:

> Failed to exercise due care under the circumstances. Specifically, he failed to reduce speed when necessary, failed to properly navigate the waves in the inlet, and failed to keep a proper lookout. Hyde operated the vessel negligently, and such negligence was a proximate cause of Hines' personal injuries and economic harm.

The District Court also found that the Defendant, Hyde's, negligence was imputed to his then employer, Boats Unlimited NC, by the doctrine of *respondeat superior* citing <u>Workman v. City of New York</u>, 179 U.S. 552, 565, 21 S.Ct. 212, 45 L.Ed. 314(1900).

This case was affirmed by the Fourth Circuit, <u>Hines v. Triad Marine Ctr, Inc.</u>, 487 Fed. Appx. 58; 2012 U.S. App. LEXIS 13992; 2012 WL 2688800.

In the case before the Court the Defendant, George Reeser Moffitt, III, failed to exercise due care under the circumstances. He failed to exercise due care under the circumstances, in that he failed to proceed at a safe speed under the prevailing circumstances and conditions existing in Beaufort Inlet. It was the day before the 4th of July and there was a lot of boat traffic. (Plaintiff's Statement of Material Facts, 22). The seas were 2 to 3 feet in height. (Plaintiff's Statement of Material Facts, 23). The waves were coming in the inlet and they were going into the waves head on. (Plaintiff's Statement of Material Facts, 24). As they were going through Beaufort Inlet, the tide was going out the inlet. (Plaintiff's Statement of Material Facts, 25). On an ebbing tide in Beaufort Inlet, the seas build up taller and steeper as you have the tide going against the waves. (Plaintiff's Statement of Material Facts, 26). George Reeser Moffitt, III was operating the boat at about 25 knots. (Plaintiff's Statement of Material Facts, 28). He was driving fast to demonstrate the vessel's abilities despite the choppy sea and heavy boat traffic. (Plaintiff's Statement of Material Facts, 29). There were a lot of boats coming in the inlet. There were sports fishers coming in, one on each side of the Moffitt vessel. The sports fishers had just passed, they were just a little bit past the Moffitt vessel when the incident happened. (Plaintiff's Statement of Material Facts, 31). Moffitt never reduced speed before he struck the waves. (Plaintiff's Statement of Material Facts, 34).

He failed to exercise due care under the circumstances, in that he failed to keep a proper lookout under the prevailing circumstances and conditions existing in Beaufort Inlet. George Reeser Moffitt, III, at the time of the incident was talking to Josh Bergman, the prospective purchaser of the vessel. They were talking about electronics and the surveyor was standing behind them at the time and was verifying that everything was working. (Plaintiff's Statement of Material Facts, 33). Moffitt

never slowed down before hitting the first wave because he didn't see it. (Plaintiff's Statement of Material Facts, 35). There was nothing obstructing Moffitt's vision in front of the vessel. (Plaintiff's Statement of Material Facts, 36).

Viewing the facts and all inferences in the light most favorable to the Plaintiff, the Defendants' Motion for Summary Judgment should be denied.

**Summary judgment should be granted for the Plaintiff.**

Summary judgment for the Plaintiff, non-movant, should be granted pursuant to Fed.R.Civ.P. Rule 56(f)(1), Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986) based on the testimony of the Defendant, George Reeser Moffitt, III as set forth in Plaintiff's Statement of Material Facts and the arguments set forth in response to the Defendants' Motion for Summary Judgment which clearly establish that the Defendant, George Reeser Moffitt, III failed to exercise due care under the circumstances. Specifically, he failed to reduce speed when necessary and failed to keep a proper lookout. George Reeser Moffitt, III operated the vessel negligently and such negligence was a proximate cause of the Plaintiff, Mary Beth Bergman's injury.

WHEREFORE, it is respectfully submitted that the Defendants' Motion for Summary Judgment should be denied and that summary judgment should be entered for the Plaintiff.

RESPECTFULLY SUBMITTED, this the 4th day of December, 2024.

WHEATLY LAW GROUP, P.A.

By: /s/ Stevenson L. Weeks
Stevenson L. Week
710 Cedar Street
Beaufort, NC 28516
Telephone: 252-728-3158
Facsimile: 252-728-5282
Email: slw@wheatlylaw.com
N.C. Bar No.: 9515

LAW OFFICES OF JOHN DREW WARLICK, P.A.

By: /s/ Davidson S. Myers
Davidson S. Myers
PO Drawer 1006
Jacksonville, NC 28541-1006
Telephone: 910-455-7700
Email: dsm@warlicklaw.com
N.C. Bar No.: 37722

30

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the 4th day of December, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Andrew J. Hanley
> andrewh@cmclawfirm.com

This the 4th day of December, 2024.

WHEATLY LAW GROUP, P.A.

By: /s/ Stevenson L. Weeks
Stevenson L. Week
710 Cedar Street
Beaufort, NC 28516
Telephone: 252-728-3158
Facsimile: 252-728-5282
Email: slw@wheatlylaw.com
N.C. Bar No.: 9515

LAW OFFICES OF JOHN DREW WARLICK, P.A.

By:  /s/ Davidson S. Myers
Davidson S. Myers
PO Drawer 1006
Jacksonville, NC 28541-1006
Telephone: 910-455-7700
Email: dsm@warlicklaw.com
N.C. Bar No.: 37722

31